# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE HL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:05-CV-2032 CAS |
| | ) | |
| MAR JAMES a/k/a James Beine, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Roman Catholic Archdiocese of St. Louis and Archbishop Raymond Burke's (collectively " the Archdiocese") motion to dismiss Counts I, II, IV, and V of plaintiff's petition. Defendants assert that plaintiff's claims in those counts fail to state a claim upon which relief can be granted. Plaintiff filed a response, defendant filed a reply, and plaintiff filed a surreply. For the following reasons, the Court will grant the Archdiocese's motion.

## I. Background

Plaintiff John Doe HL filed this action in state court against defendants Mar James also known as James Beine ("Beine"), the Roman Catholic Archdiocese of St. Louis, Archbishop Raymond Burke, Community of Saint John Bosco, New Haven School District ("New Haven"), and Does 1-20. Plaintiff Doe alleges that he was sexually molested by defendant Beine from 1978 to 1980. Doe also alleges that Beine was a priest and assistant counselor under the direct supervision, control, and authority of the remaining defendants during the period of abuse. Archbishop Burke is sued in his capacity as the Archbishop of the Archdiocese. Doe asserts the following claims: Count I--Child Sexual Abuse and/or Battery, Count II--Intentional Infliction of Emotional Distress, Count III--Intentional Infliction of Emotional Distress, Count IV--Negligence, Count V--Negligent Supervision,

Retention, and Failure to Warn, Count VI--Intentional Failure to Supervise Clergy, Count VII--Violation of Title IX (20 U.S.C. § 1681) Sexual Harassment, Count VIII--Violation of 42 U.S.C. § 1983, and Count VIII--Violation of 42 U.S.C. § 1983.[1]

In a Memorandum and Order dated December 21, 2005, the Court dismissed plaintiff's claims against New Haven in Counts I, II, IV, and VI of the petition. The Archdiocese filed a motion to dismiss Counts I, II, IV, and V, asserting that plaintiff has failed to state a claim upon which relief can be granted. Plaintiff responds that the Archdiocese is liable for those claims.

## II. Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. A complaint shall not be dismissed for failure to state a claim for which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id.; see also Neitzke v. Williams, 490 U.S. 319, 327 (1989). "At a minimum, however, a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its allegations." Hanten v. School Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999) (quoting Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998)). "In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997).

---

[1] Count II alleges intentional infliction of emotional distress claims against the Archdiocese, Community of Saint John Bosco, New Haven, and Does 1-20. Count III alleges an intentional infliction of emotional distress claim against Beine. Plaintiff's petition contains two counts listed as Count VIII for constitutional violations pursuant to 42 U.S.C. § 1983; the first one is against New Haven and the second is against Does 1-20.

### III. Discussion

#### A. Application of State Law

Defendant New Haven removed this action based on the presence of a federal question in Count VII of plaintiff's petition, which alleges harassment in violation of Title IX of the education amendments to the Education Act of 1972, 20 U.S.C. § 1681. (Notice of Removal, ¶ 6). In any civil action where district courts have original jurisdiction, district courts have supplemental jurisdiction over all other claims that are so related to the claims subject to original jurisdiction that they form part of the same case or controversy. See 28 U.S.C. § 1367. Plaintiff's state law claims in Counts I, II, III, IV, V, and VI and the federal claims in this case "derive from a common nucleus of operative fact" such that plaintiff would be expected to try them all in one judicial proceeding. See Southern Council of Indus. Workers v. Ford, 83 F.3d 966, 969 (8th Cir. 1996). Accordingly, the Court has supplemental jurisdiction over plaintiff's state law claims in Counts I, II, III, IV, V, and VI pursuant to 28 U.S.C. § 1367.

Whether district courts have diversity or supplemental jurisdiction over state law claims, the Court must apply the law of the state court with respect to those claims. Witzman v. Gross, 148 F.3d 988, 990 (8th Cir. 1998). "Where state law supplies the rule of decision, it is the duty of federal courts to ascertain and apply that law." Id. (citing Kizzier Chevrolet, Co. v. General Motors Corp., 705 F.2d 322, 329 (8th Cir. 1983)). Therefore, the Court must apply Missouri law and accept the interpretation of Missouri law as determined by the Missouri Supreme Court. See Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S. 482, 488 (1976).

#### B. Count I- Child Sexual Abuse and/or Battery

Defendants assert that Count I of plaintiff's petition fails as a matter of law because plaintiff does not allege that defendants actually performed sexual abuse or battery on plaintiff. Plaintiff

3

asserts that the defendants can be held liable for sexual abuse and battery under theories of aiding and abetting pursuant to Mo. Rev. St. § 537.046 (2000), agency ratification, and vicarious liability. The Court disagrees with plaintiff.

First, the Court finds that plaintiff cannot state a claim against defendants pursuant to § 537.046. At the time of the alleged events and the filing of this action, the Archdiocese and Archbishop Burke as its representative constituted an unincorporated association.[2] (Pet. ¶ 6-7). Under Missouri law,

> An unincorporated association is guilty of an offense if (1) the conduct constituting the offense consists of an omission to discharge a specific duty of affirmative performance imposed on the association by law; or (2) The conduct constituting the offense is engaged in by an agent of the association while acting within the scope of his employment and in behalf of the association and the offense is one identified by a statute that clearly indicates a legislative intent to impose such criminal liability on the association.

Mo. Rev. St. § 562.056.

Battery is an intended, offensive, bodily contact with another. Geiger v. Bowersox, 974 S.W.2d 513, 516 (Mo. Ct. App. 1998). Childhood sexual abuse is defined as:

> any act committed by the defendant against the plaintiff which act occurred when the plaintiff was under the age of eighteen years and which act would have been a violation of section 566.030, 566.040, 566.050, 566.060, 566.070, 566.080, 566.090, 566.100, 566.110, or 566.120, RSMo, or section 568.020, RSMo.

Mo. Rev. St. § 527.046.[3] The statutory test for aiding and abetting provides:

> A person is criminally responsible for the conduct of another when (1) the statute defining the offense makes him so responsible; or (2) Either before or during the commission of an offense with the purpose of promoting the commission of an

---

[2]The Archdiocese became a non-profit corporation on October 1, 2005.

[3]The sexual offenses are Mo. Rev. St. §§ 566.030 (rape), 566.040 (sexual assault), 566.060 (forcible sodomy), 566.070 (deviate sexual assault), 566.090 (sexual misconduct in the first degree), 566.100 (sexual abuse), and 568.020 (incest). Sections 566.050, 566.080, 566.110, and 566.120 have been repealed. See S.B. 693, § A (Mo. 1995).

4

> offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Mo. Rev. St. § 562.041.

The allegations against the Archdiocese in the petition do not meet the standards for liability. Plaintiff has not alleged an omission of a specific affirmative duty imposed on the Archdiocese by law. Further, the common law regarding battery and the statutory law regarding sexual abuse do not clearly indicate a legislative intent to impose liability on an unincorporated association. The statute defining childhood sexual abuse does not make an unincorporated association responsible for childhood sexual abuse. Also, plaintiff does not plead any facts that the Archdiocese aided or agreed to aid Beine in planning, committing, or attempting to commit childhood sexual abuse or battery.

Second, plaintiff cannot assert a claim of childhood sexual abuse or battery against the Archdiocese based on a theory of agency ratification. "Ratification in agency is an adoption or confirmation by one person of an act . . . performed on his behalf by another without authority." Springfield Land and Dev. Co., v. Bass, 48 S.W.3d 620, 628 (Mo. Ct. App. 2001). "In an agency situation, ratification occurs when person A confirms or adopts the conduct of person B, who acted on behalf of person A in absence of person A's authority." Murphy v. National Life Ins. Co., 83 S.W.3d 663, 668 (Mo. Ct. App. 2002). In his petition, plaintiff asserts, in pertinent part, "after learning of Defendant Beine and other agents' wrongful conduct, Defendants, by and through their agents, ratified the wrongful conduct described herein by failing to report it to law enforcement . . . ." (Pet. ¶ 25). Plaintiff has not cited any Missouri law and the Court has not found any Missouri law that recognizes ratification of a sexual battery or any other type of personal injury. Therefore, plaintiff has not sufficiently alleged a cause of action for child abuse or battery against the Archdiocese under an agency ratification theory.

Third, plaintiff cannot assert liability on the Archdiocese under a theory of vicarious liability or respondeat superior. "Under the doctrine of respondeat superior, an employer is responsible for the negligent acts of its employee if the employee's tortious acts were done within the scope of his employment duties." Davis v. Lambert-St. Louis Int'l Airport, 193 S.W.3d 760, 765 (Mo. 2006) (en banc). The Missouri Supreme Court definitively held in Gibson v. Brewer, 952 S.W.2d 239, 246 (Mo. 1997) (en banc), that "intentional sexual misconduct and intentional infliction of emotional distress are not within the scope of employment of a priest, and are in fact forbidden." Therefore, plaintiff cannot allege that the Archdiocese is liable for childhood sexual abuse or battery based on a theory of respondeat superior. Accordingly, the Court will dismiss Count I of plaintiff's petition against the Archdiocese.

**C. Count II- Intentional Infliction of Emotional Distress**

The Archdiocese asserts that plaintiff cannot maintain a claim for battery and a claim for intentional infliction of emotional distress because Missouri law does not allow a double recovery for intentional infliction of emotional distress and battery. Plaintiff responds that his claim for intentional infliction of emotional distress draws upon wrongful acts independent of the battery, namely, the defendants' act of betrayal through their placement of Beine as a child counselor.

"To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." Sansonetti v. City of Saint Joseph, 976 S.W.2d 572, 579 (Mo. Ct. App. 1998). "The conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (internal quotations omitted). "Where a defendant's conduct amounts to the commission of one of the traditional torts, such as battery, and the conduct

6

was not intended only to cause extreme emotional distress to the victim, the tort of intentional emotional distress will not lie, and recovery must be had under the appropriate traditional common law action." K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. 1996) (en banc). "The rationale for this rule is that the tort (intentional infliction of emotional distress) was 'intended to supplement existing forms of recovery, not swallow them.'" Sansonetti, 976 S.W.2d at 580 (citing K.G., 918 S.W.2d at 799). "While recovery for emotional distress caused by a battery may be allowable as an element of damages in the battery action, there is no independent action for intentional infliction of emotional distress where the existence of the claim is dependent upon a battery." K.G., 918 S.W.2d at 800.

In his petition, plaintiff does not assert any actions by the Archdiocese independent of Beine's alleged tort of battery and the Archdiocese's alleged intentional failure to supervise clergy. Plaintiff's claim of intentional infliction of emotional distress against the Archdiocese includes the following pertinent allegations:

> . . . .
>
> 32. Defendants intentionally failed to supervise, remove or otherwise sanction Defendant Beine after they had actual notice of his dangerous propensity to abuse children, and continued to place him in positions of authority over children and adolescents, including Plaintiff.
>
> 33. Defendants knew or should have known that Defendant Beine was unsuitable for the position which he held.
>
> 34. Defendants failed to adequately review and monitor the services which were provided by Defendant Beine, intentionally turning a blind eye to his misconduct.
>
> 35. Defendants intentionally failed to confront, remove or sanction Defendant Beine about known irregularities in his employment, including taking children on overnight and other outings, spending unusual amounts of time alone with children and having received reports of impropriety from concerned and angry parents.
>
> 36. Defendants failed to act upon information gained during the course of their supervision of Defendant Beine.

37. Defendants intentionally failed to supervise the children within their care, custody or control from coming in contact with the known risk presented by Defendant Beine.

38. At all times relevant, Defendants Archdiocese and Archbishop engaged in extreme and outrageous conduct, intended to cause harm or committed in reckless disregard of the probability of causing emotional distress and harm.

39. Defendants Archdiocese and Archbishop engaged in unconscionable and outrageous conduct beyond all possible bounds of decency and utterly intolerable in a civilized society. Defendants' conduct caused Plaintiff severe emotional distress of such nature that no reasonable person in a civilized society could be expected to endure it.

. . . .

As shown by the allegations in Count II, plaintiff's claim of intentional infliction of emotional distress against the Archdiocese is based on other torts, namely battery and intentional failure to supervise clergy. Plaintiff's claims of battery and intentional failure to supervise clergy remain pending. The Court finds plaintiff's attempt to distinguish his tort claims from the intentional infliction of emotional distress claim unpersuasive and will dismiss Count II of the petition for failure to state a claim upon which relief can be granted.

### D. Count IV-Negligence

Plaintiff asserts a claim of general negligence against the Archdiocese in Count IV of his petition. The Archdiocese contends that the Missouri Supreme Court's Gibson ruling precludes plaintiff from asserting negligence claims against the Archdiocese.

"Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." Gibson, 952 S.W.2d at 246 (citations omitted). "To establish a negligence claim, a plaintiff must show: (1) defendant had a duty to the plaintiff; (2) defendant failed to perform that duty; and (3) defendant's breach was the proximate cause of the plaintiff's injury." Id. at 249. A finding of negligence depends on whether a "reasonably prudent person would have anticipated danger and provided against it." Id. With specific reference to this

type of case, the Missouri Supreme Court held, "In order to determine how a 'reasonably prudent Diocese' would act, a court would have to excessively entangle itself in religious doctrine, policy, and administration." Id. at 249-50.

The Free Exercise Clause of the First Amendment of the United States Constitution forbids excessive entanglement by the Court in religious doctrine, policy, and administration. See Scharon v. St. Luke's Episcopal Presbyterian Hosps., 929 F.2d 360, 363 (8th Cir. 1991) (the Free Exercise Clause of the First Amendment prohibits courts from analyzing personnel decisions by church-affiliated institutions affecting clergy because such decisions are per se religious matters). Based on the Free Exercise Clause of the First Amendment, the Missouri Supreme Court has definitively precluded general negligence claims against church dioceses for actions regarding alleged sexual misconduct of priests. Gibson, 952 S.W.2d at 249-50. Therefore, the Court must dismiss plaintiff's claim of general negligence against the Archdiocese as alleged in Count IV of the petition.

**D. Count V- Negligent Supervision, Retention, and Failure to Warn**

In Count V of plaintiff's petition, plaintiff asserts claims against the Archdiocese for negligent supervision, retention, and failure to warn. Defendants assert that plaintiff's allegations fail to state a claim as a matter of law.

"In order to establish a claim for negligent hiring and/or retention, the plaintiff must show: that (1) the employer knew or should have known of the employee's dangerous proclivities, and (2) the employer's negligence was the proximate cause of the plaintiff's injuries." Bost v. Clark, 116 S.W.3d 667, 678 (Mo. Ct. App. 2003) (citing Gibson, 952 S.W.2d at 246). "Religious organizations are not immune from civil liability for the acts of their clergy." Gibson, 952 S.W.2d at 246. "If neutral principles of law can be applied without determining questions of religious doctrine, polity, and practice, then a court may impose liability." Id. "Questions of hiring, ordaining, and retaining

9

clergy, however, necessarily involve interpretation of religious doctrine, policy, and administration. Such excessive entanglement between church and state has the effect of inhibiting religion, in violation of the First Amendment." Gibson, 952 S.W.2d at 246-47. "A church's freedom to select clergy is protected as part of the free exercise clause of religion against state interference." Id. at 247. Therefore, the Court must dismiss plaintiff's claims against the Archdiocese for negligent retention.

The Court must also dismiss plaintiff's claim for negligent supervision of clergy. "Adjudicating the reasonableness of a church's supervision of a cleric-what the church should know-requires inquiry into religious doctrine." Gibson, 952 S.W.2d at 247. "[T]his would create an excessive entanglement, inhibit religion, and result in the endorsement of one model of supervision." Id. Therefore, the Court must dismiss plaintiff's claim for negligent supervision of clergy.

Finally, the Court has not found and plaintiff has not shown that a failure to warn claim can be asserted against the Archdiocese outside of the general negligence claims already dismissed by this Court. Therefore, the Court will dismiss Count V of plaintiff's petition in its entirety.

## IV. Service of Other Defendants

On review of the file, the Court notes that plaintiff has failed to serve defendants Mar James, Community of Saint John Bosco, and Does 1-20. The Court will grant plaintiff an additional twenty days to serve defendants Mar James and Community of Saint John Bosco. If Mar James and Community of Saint John Bosco are not served within 20 days of the date of this order, they will be dismissed from this action without prejudice.

In general, it is impermissible to name fictitious parties as defendants. Phelps v. U.S. Fed. Gov't, 15 F.3d 735 (8th Cir.), cert. denied, 511 U.S. 1114 (1994). "[A]n action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the

identity of the party to be ascertained after reasonable discovery." Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) (quoting Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985)). "If discovery identifies other persons who should be named as defendants, it will be simple enough for plaintiff to add them by amendment, after properly securing leave of court." Id. In such a case, rather then dismissing a claim, a court should order the disclosure of the John Doe party's identity by other defendants named and served, or permit the plaintiff to identify the person through discovery. Munz, 758 F.2d at 1257. The Court will order plaintiff to file an amended complaint within forty-five (45) days of the date of this order naming all defendants previously identified as John Does 1-20. If plaintiff fails to timely comply with this order, his claims against the remaining John Doe defendants will be dismissed without prejudice.

**V. Conclusion**

Based on the foregoing, the Court will grant the Archdiocese's motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Roman Catholic Archdiocese of St. Louis and Archbishop Raymond Burke's motion to dismiss Counts I, II, IV, and V of plaintiff's petition is **GRANTED**. [Doc. 10]

**IT IS FURTHER ORDERED** that plaintiff is **GRANTED** an additional twenty (20) days to serve defendants Mar James and Community of Saint John Bosco.

**IT IS FURTHER ORDERED** that the Clerk of Court shall modify the docket sheet in this action to reflect the correct name of Community of Saint John Bosco as stated on plaintiff's petition.

**IT IS FURTHER ORDERED** that the parties are granted leave to conduct discovery prior to the Rule 16 Scheduling Conference.

11

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint within forty-five days of the date of this order naming the defendants previously named as John Does 1-20.

An order of partial dismissal shall accompany this memorandum and order.

_____
**CHARLES A. SHAW
UNITED STATES DISTRICT JUDGE**

Dated this 15th day of August, 2006.